IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SUMMER D. CHAMBERS                                                                            PLAINTIFF

v.                                    Civil No. 10-2192

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Summer D. Chambers, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her SSI application on August 16, 2007, alleging a disability onset date of August 1, 2007, due to neurofibromatoses,[1] borderline intellectual functioning, and anxiety disorder. Tr. 42, 44, 88-90, 112. On the application date, Plaintiff was twenty three years old with a seventh grade special education. Tr. 14-15, 117, 189, 249, 258. She has past relevant work in housekeeping and fast food service. Tr. 113-114, 155, 189, 258.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 56-60. At Plaintiff's request, an administrative hearing was held on March 12, 2009. Tr. 7-36. Plaintiff was

---

[1] Neurofibromatosis is "an autosomal dominant disorder that causes tumors to develop along the course of peripheral nerves and that occasionally results in marked soft-tissue or bone deformities." THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 2903-04 (19th ed. 2011). There is no specific treatment, but tumors can be removed surgically. *Id.*

present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on November 23, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 39-50. Subsequently, the Appeals Council denied Plaintiff's Request for Review on November 19, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff now seeks judicial review of that decision.

**II.    Medical History**

On September 18, 2007, Plaintiff saw C.R. Magness, M.D., for a consultative physical examination. Tr. 171-177. On examination, Dr. Magness noted wheezing and increased anterior-posterior ("AP") diameter in Plaintiff's chest. Tr. 174. Plaintiff had bilateral wrist weakness. Tr. 173. Flexion of both wrists was limited to 40 degrees (normal range of motion is 60 degrees). Tr. 174. Limb function was "ok," except Plaintiff had 70% grip strength on the right and 75% grip strength on the left. Tr. 175. However, she was able to hold a pen and write, touch her fingertips to her palm, oppose her thumbs to her fingers, and pick up a coin. Tr. 175. She had a poor ability to squat and rise from a squatting position. Tr. 175. Dr. Magness diagnosed Plaintiff with chronic obstructive pulmonary disease ("COPD"), asthma, and carpel tunnel syndrome, worse on the right. Tr. 177. He found moderate to severe limitation in Plaintiff's ability to handle and finger. Tr. 177. He also noted anxiety and personality symptoms, as well as previous drug addiction. Tr. 177.

In a Physical Residual Functional Capacity ("RFC") Assessment dated September 23, 2007, Robert Redd, M.D., found Plaintiff could occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, stand/walk at least two hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push/pull with those limitations. Tr. 178-185. He determined Plaintiff had no manipulative, visual, communicative, or environmental limitations, but could only

occasionally climb, balance, stoop, kneel, crouch, or crawl. Tr. 180-182.

On October 1, 2007, Plaintiff saw Robert L. Spray, Jr., Ph.D., for a consultative mental evaluation. Tr. 188-194. Plaintiff reported receiving treatment at Western Arkansas Counseling and Guidance Center ("WACGC") in 1999 for drug usage and depression. Tr. 188. She also received inpatient treatment at Willow Crest Hospital in Oklahoma as well as substance abuse rehabilitation. Tr. 189, 226-246. However, Plaintiff had not received treatment or taken medication since 2000 or 2001 due to cost. Tr. 189. When asked about substance abuse, Plaintiff reported prior use of methamphetamine, crystal meth, and marijuana. Tr. 189. She reportedly used marijuana about once per month and drank "at least a pint and a 12-pack" of alcohol almost every day. Tr. 189.

On examination, Plaintiff was cooperative and alert, but had a "wrung-out," stressed look about her. Tr. 189. She appeared sad and tearful. Tr. 190. Thought processes were logical, goal-directed, and relevant. Tr. 190. Although Plaintiff admitted a history of suicidal ideation, she denied any current suicidal thoughts. Tr. 190. She reported nightmares associated with childhood sexual abuse. Tr. 190. She also reported hearing voices and having other personalities. Tr. 190.

On the Wechsler Adult Intelligence Scale-III ("WAIS-III"), Plaintiff received a verbal IQ of 71, a performance IQ of 87, and a full-scale IQ of 77, placing her within the borderline range of intelligence. Tr. 190. Weaknesses were identified as verbal reasoning and arithmetic. Tr. 191. Dr. Spray diagnosed Plaintiff with dysthymia, panic disorder, PTSD vs. dissociative identity disorder (provisional), alcohol dependence, cannabis abuse, polysubstance abuse in remission, and borderline intellectual functioning. Tr. 191. He estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 50-60. Dr. Spray noted some impairment in the ability to attend and sustain concentration, comprehend verbal instructions, and complete tasks in acceptable time frame. Tr.

192. He also noted that, in a work setting, "interpersonal relationships may be strained due to suspiciousness, high levels of anxiety, and saddened mood." Tr. 192. However, Plaintiff gave good effort and persisted well, and her pace was adequate. Tr. 192.

In a Psychiatric Review Technique Form ("PTRF") dated October 11, 2007, Jay Rankin, an agency specialist, determined Plaintiff did not meet the requirements of Listings 12.04 (affective disorders), 12.05 (mental retardation), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). Tr. 195-208. Rankin found mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 205.

In a Mental RFC Assessment, Rankin found Plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision and without being unduly distracted by others, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 211-214. He found Plaintiff was not significantly limited in the twelve remaining categories. Tr. 213. Based on his findings, Rankin determined Plaintiff was capable of performing unskilled work. Tr. 213.

On May 28, 2009, Plaintiff saw David Oberlander, M.D., at Conway Neurology, for a consultative physical examination. Tr. 253-255. She complained of depression, anxiety, headaches,

and memory loss.  Tr. 253.  Plaintiff denied wheezing, shortness of breath, asthma attacks, or pneumonia.  Tr. 253.  On examination, Plaintiff's recent and remote memory were intact.  Tr. 254.  She had normal motor strength, coordination, sensation, and gait.  Tr. 254.  Overall, Plaintiff's neurological examination was normal.  Tr. 254.  Additionally, her language, speech, and memory were within normal limits.  Tr. 254-255.  Dr. Oberlander believed Plaintiff suffered from tension headaches.  Tr. 254.

On June 25, 2009, Plaintiff saw Patricia J. Walz, Ph.D., for a consultative mental evaluation.  Tr. 257-265.  Plaintiff complained of neurofibromatosis, which caused brown spots underneath her skin, speech and comprehension problems, ADHD, and scoliosis.  Tr. 257.  She took no prescription medication.  Tr. 258.  When asked about education, Plaintiff stated she quit school in the ninth grade.  Tr. 258.  She reportedly repeated several grades and had special education classes.  Tr. 258.  Areas of difficulty included reading and arithmetic.  Tr. 258.  Plaintiff had work experience in fast food service and housekeeping, but stated she had trouble getting along with others.  Tr. 258.  She had not received any recent treatment or taken medication because of cost.  Tr. 259.  She reported recent suicidal ideation.  Tr. 259.

On examination, Plaintiff cried when frustrated and appeared rushed at times.  Tr. 260.  Her effort was suspect.  Tr. 260.  On the WAIS-III, Plaintiff received a verbal IQ of 80, a performance IQ of 99, and a full scale IQ of 88.  Tr. 261.  On the Computer Assessment of Response Bias ("CARB"), Plaintiff did not put forth good effort and her scores were considered invalid.  Tr. 261.  On the Wechsler Memory Scale, Plaintiff earned scores in the average range with the exception of auditory recognition memory, which was high average, and working memory (attention and concentration), which was low average.  Tr. 261.  On the Wide Range Achievement Test III

("WRAT-3"), Plaintiff's scores were consistent with a third grade reading level, a second grade spelling level, and a fourth grade arithmetic level. Tr. 262. Results of the Minnesota Multiphasic Personality Inventory, Revised ("MMPI-2"), were considered invalid due to exaggeration of symptoms. Tr. 262. Fine manual dexterity was slowed in the right hand and low average in the left hand. Tr. 262. Plaintiff's grip was weak bilaterally. Tr. 262.

Dr. Walz noted that although Plaintiff did not put forth adequate effort, her performance did not suggest mental retardation. Tr. 262. However, she found consistent signs of left hemisphere dysfunction including worse verbal than performance IQ, impairment on the Aphasia screen, and right motor slowing, which most likely reflected a verbal learning disorder. Tr. 263. Dr. Walz diagnosed Plaintiff with major depression, recurrent, moderate to severe, panic disorder without agoraphobia, history of polysubstance dependence in partial remission, and personality disorder with borderline and antisocial features. Tr. 263. She estimated Plaintiff's GAF score at 40 based on suicidal thinking and poor social functioning. Tr. 263.

### III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it

is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.  Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since August 16, 2007, the application date. Tr. 44. At step two, the ALJ found Plaintiff suffers from neurofibromatosis, borderline intellectual functioning, and anxiety disorder, all of which

were considered severe impairments under the Act. Tr. 44. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 44-46. At step four, the ALJ found Plaintiff could perform unskilled work where interpersonal contact is incidental to the work performed. Tr. 46-49. Physically, he determined Plaintiff could lift/carry ten pounds occasionally and less than ten pounds frequently, sit for about six hours in an eight-hour workday, stand and walk for at least two hours in an eight-hour workday, occasionally climb, balance, stoop, kneel, crouch, and crawl, and frequently handle and finger. Tr. 46-49. Based on this RFC assessment, the ALJ determined Plaintiff could not perform her past relevant work. Tr. 49. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Tr. 49-50. Accordingly, the ALJ determined Plaintiff was not under a disability from August 16, 2007, the application date, through November 23, 2009, the date of the decision. Tr. 50.

On appeal, Plaintiff contends that the ALJ erred by: (1) failing to find her carpal tunnel syndrome severe; and (2) improperly determining her RFC. *See* Pl.'s Br. 8-17. The court agrees.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as bench assembler, of which there are 4200 jobs regionally and 84,000 jobs nationally, inspector/sorter, of which there are 1000 jobs regionally and 68,000 jobs nationally, and surveillance systems monitor, of which there are 300 jobs regionally and 34,000 jobs nationally. Tr. 50.

functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000

In this instance, the ALJ did not properly take into account the limitations arising from Plaintiff's wrist impairment. Dr. Magness found bilateral wrist weakness, limited flexion (40 degrees) in both wrists, 70% grip strength in Plaintiff's right hand, and 75% grip strength in Plaintiff's left hand. Tr. 175. He diagnosed Plaintiff with carpal tunnel syndrome and noted moderate to severe limitation in Plaintiff's ability to handle and finger. Tr. 177. In May 2009, Dr. Oberlander found normal motor strength and intact fine motor skills. Tr. 254. However, in June 2009, Dr. Walz found bilateral grip weakness, slowed fine manual dexterity in the right hand, and low average dexterity in the left hand. Tr. 262

It is the ALJ's function to resolve conflicts among various treating and examining physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). However, based on the objective findings of two consultative physicians, Plaintiff's ability to perform frequent,[3] repetitive handling and fingering is questionable. Moreover, the court cannot account for the ALJ's finding that Plaintiff's carpal tunnel syndrome poses no more than a minimal effect on her ability to perform basic work activities. Tr. 44. As such, the court remands this case for further consideration of Plaintiff's carpal tunnel syndrome and how it affects her ability to perform work existing in significant numbers in the national economy. On remand, the ALJ should attempt to obtain medical source statements from

---

[3] Frequent is defined as occurring between one-third and two-thirds of the time. *See* SSR 83-10. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. *Id.*

Dr. Magness and Dr. Oberlander concerning Plaintiff's hand limitations, so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis.

## V.    Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 18th day of November 2011.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE